UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOHN WOODRUFF,**<br>    Plaintiff,<br><br>v.<br><br>**LUIGI RAGAZZONNI, et al.**,<br>    Defendants. | **Case No. 2:23-cv-1155-CLM-NAD** |

## MEMORANDUM OPINION AND ORDER

The magistrate judge has entered a report, recommending that under 28 U.S.C. § 1915(e) and 1915A, the court dismiss without prejudice all of Plaintiff John Woodruff's claims except his Fourth Amendment wrongful search and seizure claims against Defendants Luigi Ragazzoni and David Pressley (Counts I and III). (Doc. 18). The magistrate judge recommended that the court refer these Fourth Amendment claims to him for further proceedings. (*See id.*, p. 21). Woodruff objects to the Report and Recommendation. (*See* Doc. 20).

## BACKGROUND

1. *Statement of the alleged facts*: On August 27, 2021, Woodruff learned that Shelby County had issued a warrant for his arrest based on alleged violations of his probation for failure to register a vehicle in compliance with the Alabama Sex Offender Registration and Community Notification Act. (Doc. 9, p. 2; Doc. 18, p. 4, n.1). That evening, Woodruff drove to his fitness club where Pelham police officers directed him to exit his vehicle. (Doc. 9, p. 3). The Pelham officers handcuffed Woodruff, but they informed him that they only were holding him until Shelby County officers arrived. (*Id.*). Ragazzoni, a Shelby County deputy, then arrived and took custody of Woodruff. (*Id.*). Woodruff told Ragazzoni that his "vehicle was not to be towed as it was lawfully parked upon private commercial property." (*Id.*, p. 4). But Ragazzoni "rifle[d] through [Woodruff's] truck" and then had it towed. (*Id.*).

Around three days later, Woodruff bonded out of the Shelby County Jail and retrieved his impounded truck. (*Id.*). That same day, the Shelby County prosecutor moved to revoke Woodruff's probation on an underlying conviction for violating ASORCNA. (*Id.*, *see also* Doc. 18, p. 6 n.3).

A few weeks later, Woodruff went to Buc-ee's in Leeds, Alabama (Doc. 9, p. 4). After Woodruff left the store, he returned to his truck, which was then surrounded by Leeds police officers who ordered Woodruff to get out of the truck. (*Id.*, p. 5). The officers told Woodruff that they were arresting him on behalf of "Shelby County," which had located Woodruff from an image of his truck that was "captured by a plate-reading traffic camera in Moody." (*Id.*). Pressley, another Shelby County Sheriff's Deputy, then arrived and placed Woodruff in his patrol car. (*Id.*). And again, over Woodruff's protestation, Pressley searched Woodruff's truck and then impounded it. (*Id.*).

2. *Procedural history*: In his amended complaint (doc. 9), Woodruff brings claims for unlawful search and seizure of his truck under federal law (Counts I and III); claims for unlawful search and seizure under state law (Counts II and IV); a claim for "unlawful surveillance" under federal law (Count V); a claim for "unlawful surveillance" under state law (Count VI); "willful negligence" under state law (Count VII); a general claim for violation of his civil rights under federal law (Coun VIII); and a claim for conspiracy under federal law (Count IX). Woodruff does not challenge his underlying arrests or prosecution. (Doc. 9, pp. 4, 6).

## DISCUSSION

Woodruff does not raise any specific objections to the magistrate judge's recommendation that the court dismiss Counts II, IV, V, VI, VII, and IX. And the court agrees with the magistrate judge's recommendation that the court dismiss these counts for failure to state a claim. Counts II, IV, VI, and VII are all state-law claims. Under Alabama law, sheriffs and deputy sheriffs "are entitled to immunity from individual-capacity claims for damages whenever the acts that form the basis of their alleged liability were being performed within the line and scope of their employment." *Ex parte Underwood*, --- So. 3d ----, 2025 WL 1776225, at *4 (Ala. June 27, 2025) (cleaned up). Because Defendants' alleged conduct was within the scope of their employment as the

Shelby County Sheriff and deputies, they are immune from suit for state-law individual-capacity damages claims. And as the magistrate judge noted, even if the court were to liberally construe Count VII as a § 1983 claim against Sheriff Samaniego, that claim would fail because Woodruff does not plausibly allege a claim of supervisory liability. Plus, Woodruff's unlawful surveillance claims against Sheriff Samaniego (Counts V and VI) are based only on speculation that Sheriff Samaniego may have used his former employment with DHS to improperly surveil Woodruff. Thus, those counts do not plausibly state a claim for relief. As for Count IX, the magistrate judge correctly noted that the intracorporate conspiracy doctrine bars Woodruff's § 1983 conspiracy claim. *See Grider v. City of Auburn*, 618 F.3d 1240, 1260–61 (11th Cir. 2010). The court will thus accept the magistrate judge's recommendation that the court dismiss these counts and will discuss them no further.

### A. Judicial Economy

Woodruff first asserts that because the magistrate judge recommends that Counts I and III proceed past the screening stage, judicial economy supports allowing all of his claims to proceed. (*See* Doc. 20, pp. 2–3). According to Woodruff, discovery on his unlawful search and seizure claims will "produce evidence which [will] revive other claims but [will] then require motions to restore claims and motions for discovery in the restored claim, all of which injects avoidable delays." (*Id.*, p. 3). As explained, most of the claims that the magistrate judge recommends the court dismiss fail as a matter of law. And Woodruff's unlawful surveillance claims against Sheriff Samaniego are based on pure speculation. The court thus declines to reject the Report and Recommendation based on Woodruff's belief that discovery might provide him with facts that could revive his deficiently pleaded claims.

### B. Prison Litigation Reform Act, 28 U.S.C. § 1915A

Woodruff next argues that the magistrate judge's screening of his complaint under the Prison Litigation Reform Act is "overbroad and abusive," asserting that the Report and Recommendation is "a 23-page dissection of Woodruff's stated causes of action" rather than "a very limited screening." (*Id.*).

Woodruff misunderstands the screening provisions of the PLRA. Under the PLRA, this court is required to screen any "civil action in which a prisoner seeks redress from a governmental entity or officer or employee." 28 U.S.C. § 1915A(a).[1] "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). "And a complaint may be subject to dismissal for failure to state a claim—based on an affirmative defense—. . . when the affirmative defense appears on the face of the complaint." *Wells v. Brown*, 58 F.4th 1347, 1350 (11th Cir. 2023). So while Woodruff objects to the magistrate judge's identification of "defenses which Defendants would propound," (doc. 20, p. 4), that is the exact role the screening process requires. *See, e.g.*, *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (noting that a district court "may dismiss *sua sponte* a complaint if it is frivolous, malicious, or fails to state a claim upon which relief may be granted").

Woodruff was also granted *in forma pauperis* status. (*See* Docs. 2, 3, 13). So his claims are also subject to screening under 28 U.S.C. § 1915(e)(2). *See Wells*, 58 F.4th at 1355–56. Under § 1915(e)(2) this court is to *sua sponte* dismiss an in forma pauperis complaint if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

The magistrate judge's screening of Woodruff's complaint complies with the requirements of both statutes. So the court **OVERRULES** Woodruff's objection that asserts that the magistrate judge's screening of his complaint was "overbroad and abusive."

---

[1] At the time Woodruff filed this action he was incarcerated. (*See* Doc. 1). But Woodruff has since notified the court that he has been released from the custody of the Alabama Department of Corrections. (*See* Doc. 6). For the purposes of the PLRA's screening provisions, the court looks to Woodruff's status at the time he filed his initial complaint. *See Danglar v. Dep't of Corr.*, 50 F.4th 54, 59 (11th Cir. 2022).

4

### C.   Judicial Notice of the Arrest Warrant

Woodruff also objects to the magistrate judge taking judicial notice of several documents in his state court cases, including his arrest warrant. (*See* Doc. 20, pp. 5–6). As discussed, Woodruff does not challenge the validity of his arrest, and he notes in his objections that any causes of action based on his prosecution, arrest, or imprisonment are not ripe. (*See id.*, p. 5, n.1). But Woodruff's complaint references Shelby County issuing a warrant for his arrest. (*See* Doc. 9, p. 2). Because Woodruff's complaint references his arrest warrant, it was appropriate for the magistrate judge to consider the contents of the warrant when evaluating Woodruff's claims. *See Grider v. Cook*, 522 F. App'x 544, 546 n.2 (11th Cir. 2013).

Nor did the magistrate judge's consideration of Woodruff's arrest warrant affect his recommendation that the court dismiss most of Woodruff's claims. Woodruff asserts that the magistrate judge could not use the arrest warrant to conclude that defendants are shielded by the warrant and also enjoy sheriff's immunity for actions performed in the sheriff's name. But Woodruff cites no authority to support this assertion. To the extent that Woodruff is objecting to the magistrate judge's finding that state law immunity bars his state-law claims, that objection is **OVERRULED**. As explained, sheriffs and deputy sheriffs cannot be sued under state law for acts being performed during the line and scope of their official duties. *See Ex parte Underwood*, 2025 WL 1776225, at *4. And sheriffs and deputy sheriffs are acting within the line and scope of their duties when they take actions related to the execution of an arrest warrant. Plus, even without considering the arrest warrant's contents, the allegations in Woodruff's complaint establish that his claims against Defendants are based on actions taken during the line and scope of their official duties. So Defendants are immune from Woodruff's state-law claims.

Finally, the court notes that the magistrate judge does not recommend that the court dismiss any of Woodruff's federal-law claims based on the defense of qualified immunity. So to the extent that Woodruff asserts that the magistrate judge improperly considered the arrest warrant to conclude that Defendants were acting within the scope of their discretionary authority, the court finds this argument misplaced.

### D.  Estoppel

Woodruff's next objection is labeled as an estoppel argument and asserts that his arrest warrant "was obtained by an outright lie," so the magistrate judge erred in relying on the warrant to find that Defendants are immune from suit under Alabama law. (Doc. 20, pp. 6–7). But Woodruff's complaint does not challenge the validity of his arrests. (*See* Doc. 9, pp. 4, 6). And though Woodruff argues that "Defendants are judicially estopped from asserting as a defense that their impoundment of [his] vehicle was permitted incident to an arrest," (doc. 20, p. 6), the arrest warrant was based on the statement of Investigator William Mullins, who is not a named defendant (*see* doc. 18-3). Woodruff cannot both not challenge his arrests and claim Defendants' reliance on the arrest warrant was misplaced.

Besides, as the court has repeatedly noted, the allegations in Woodruff's complaint establish that Defendants' actions were within the line and scope of their duties as Shelby County Sheriff and Deputy Sheriffs. So the court needn't rely on the arrest warrant to determine that Woodruff cannot bring his state-law claims against the Defendants. In filing his complaint, Woodruff chose to challenge the search and seizure of his vehicle without challenging the validity of his underlying arrests. So the facts of this case, taken as true and construed in the light most favorable to Woodruff, show that Defendants' actions relate to presumptively valid arrests. The court thus **OVERRULES** this objection.

### E.  Perceived Errors of Case Law

Woodruff also objects to the case law discussed by the magistrate judge when analyzing Woodruff's unlawful search and seizure claims related to the alleged wrongful impoundment of his truck. (Doc. 20, pp. 7–9). Woodruff first says that the magistrate judge erred in discussing several Supreme Court cases on the search and seizure of vehicles because Woodruff alleged in his complaint that those cases were distinguishable. The four Supreme Court cases Woodruff disavows all concern the search, seizure, or impoundment of a vehicle incident to an arrest. *See Colorado v. Bertine*, 479 U.S. 367 (1987); *South Dakota v. Opperman*, 428 U.S. 364 (1976); *Cady v. Dombrowski*, 413 U.S. 433 (1973); and *Cooper v. California*, 386 U.S. 58 (1967). And it is for the court to decide the relevancy of these cases. So the court rejects this argument.

The court also rejects Woodruff's other arguments that assert that the magistrate judge improperly analyzed the relevant case law. Contrary to Woodruff's assertion, *Cannon v. State*, 601 So. 2d 1112 (Ala. Crim. App. 1992), overruled *Morton v. State*, 452 So. 2d 1361 (Ala. Crim. App. 1984), "[t]o the extent that *Morton* holds that a driver must be given an election on whether to have his vehicle impounded or left where parked." *See Cannon*, 601 So. 2d at 1115. And though Woodruff faults the magistrate judge for not discussing *J.T.C. v. State*, 990 So. 2d 444 (Ala. Crim. App. 2008), and *Arizona v. Gant*, 556 U.S. 332 (2009), a judge's failure to cite the entire realm of case law applicable to a given fact pattern does not make the legal analysis of that claim any less correct. Plus, the magistrate judge likely didn't cite *J.T.C.* or *Gant* because they are not inventory and impoundment cases. *See J.T.C.*, 990 So. 2d at 445–46 (considering whether officers had probable cause to conduct warrantless search of juvenile's vehicle incident to a traffic stop); *Gant*, 556 U.S. at 336–37 (noting that, after Gant was arrested on a traffic violation, handcuffed, and placed in the back of a patrol car, officers searched his vehicle, found cocaine, and charged Gant with possession).[2]

Regardless, the magistrate judge has recommended that the court allow Woodruff's Fourth Amendment search and seizure claims to proceed because the Shelby County deputies were required to follow their own regulations when they inventoried, then impounded Woodruff's truck. (*See* Doc. 18, pp. 12–15). So Woodruff's objections related to his impoundment claims are **OVERRULED AS MOOT**.

---

[2] Woodruff explains that he didn't cite *Gant* in his amended complaint "to entice Defendants to conclude Woodruff" was ignorant "of *Gant* and to state a policy defense that was in conflict with *Gant*." (Doc. 20, p. 8, n.3). He then complains that because of the magistrate judge's report and recommendation "he has been forced to disarm this booby-trap and bemoans that pro se litigants are categorically assumed unsophisticated." (*Id.*). The court warns Woodruff that had an attorney represented to the court that he was "booby-trapping" a complaint to mislead opposing counsel, the court would consider sanctions. And Federal Rule of Civil Procedure 11 applies to pro se litigants. *See* Fed. R. Civ. P. 11(b)(1) (In presenting a pleading to the court, "an unrepresented party certifies to the best of the person's knowledge information and belief . . . that it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."). So future attempts to mislead the court or Defendants will likely result in sanctions.

### F. *Monell* Liability

Woodruff next asserts that his "complaint (in another booby-trap) sets forth factual allegations consistent with a cause of action under Monell v. Department of Social Services, 436 U.S. 658 (1978)." (Doc. 20, p. 9). According to Woodruff, the idea behind his "booby-trap" was that "if Defendants notice the indicia [of a *Monell* claim] they will be more likely to consider the value of settlement (and if they fail to notice the indicia they will be harmed in future suits)." (*See id.*). Woodruff then says that the magistrate judge misidentified these allegations as allegations of Sheriff Samaniego being liable under a theory of respondeat superior. (*See id.*).

The court again warns Woodruff that future attempts to "booby trap" Defendants or the court will likely result in sanctions. And the magistrate judge did not consider whether Woodruff had stated a claim under *Monell* because Woodruff did not bring a *Monell* claim. A valid *Monell* claim requires a plaintiff to plead (1) that his constitutional rights were violated, (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) that the custom or policy caused the violation. *See Teel v. Lozada*, 99 F.4th 1273, 1279 (11th Cir. 2024). A plaintiff can satisfy the second element in one of three ways: "(1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well-settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

The *Monell*-related allegations that Woodruff says he sprinkled throughout his complaint may include his allegations that Sheriff Samaniego "sustained an aggressive policy of illegal and/or unlawful impoundments/searched in open disregard of constitutionality, and that as chief policy maker for his agency [Samaniego] is also liable for the trespasses of [Ragazzoni] and [Pressley] . . . to the extent they acted according to such policy." (Doc. 9, p. 6). But these allegations do nothing more than recite the elements of a cause of action for supervisory liability. And Woodruff's other allegations against Sheriff Samaniego do not state a claim for *Monell* liability. For example, Woodruff claims that Samaniego "used his influence and/or

holdover credentials of his prior employment in the U.S. Department of Homeland Security to surveil Plaintiff in a manner otherwise unavailable or lawful under his state authority." (*Id.*). He then asserts that Samaniego "created or perpetrated a conspiracy to violate Plaintiff's civil rights . . . ." (*Id.*).

In other words, Woodruff's well-pleaded factual allegations claim that he was arrested based on a personal vendetta against him and not under a custom or policy of Shelby County itself. Thus, the magistrate judge properly construed Woodruff's claims as including a respondeat superior claim against Sheriff Samaniego but not a *Monell* claim against Shelby County. And though Woodruff says he attempted to "booby-trap" his amended complaint to sneak in a *Monell* claim, none of the 9 counts Woodruff brought in his amended complaint actually pleads a claim under *Monell*. So the court **OVERRULES** Woodruff's *Monell*-related objections. *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (While this court holds "the allegations of a pro se complaint to less stringent standards than formal pleadings drafted by lawyers[,]" the court cannot "serve as de facto counsel for a party, or . . . rewrite an otherwise deficient pleading in order to sustain an action.").

### G.     Typographical Error

Woodruff finally objects to the magistrate judge construing Count VIII as being brought under 42 U.S.C. § 1981, asserting that he made a typographical error and intended to bring that count under 42 U.S.C. § 1983 instead. The magistrate judge considered all of Woodruff's constitutional claims under § 1983. And while § 1983 provides a cause of action for constitutional violations committed under color of state law, *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187–88 (11th Cir. 1999), § 1983 creates no rights independent of the constitution, *see, e.g.*, *Williams v. Bennett*, 689 F.2d 1370, 1390 (11th Cir. 1982) (noting that the remedial scheme set out by Congress in § 1983 "precludes the implication of a direct constitutional action" for federal constitutional violations and recognizing that a cause of action against an individual for an alleged federal constitutional violation can only be brought under 42 U.S.C. § 1983). Thus, it would be superfluous for Woodruff to bring Count VIII as a general claim under § 1983, and the court **OVERRULES** Woodruff's objection to the magistrate judge's recommendation that the court dismiss his freestanding § 1983 claim.

## CONCLUSION

Having reviewed and considered de novo all the materials in the court file, including the magistrate judge's report and recommendation and Woodruff's objections, the court **OVERRULES** Woodruff's objections, **ADOPTS** the report, and **ACCEPTS** the recommendation. Consistent with that recommendation, the court **DISMISSES WITHOUT PREJUDICE** all of Woodruff's claims **EXCEPT** his Fourth Amendment wrongful search and seizure claims against Ragazzoni and Pressley (Counts I and III).

The court **REFERS** Woodruff's Fourth Amendment wrongful search and seizure claims (Counts I and III) to the magistrate judge for further proceedings.

The court **DIRECTS** the Clerk of Court to **TERMINATE** Sheriff John Samaniego as a Defendant listed on the docket sheet.

**Done** and **Ordered** on October 16, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE