FILED
2026 Sep-02 AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JOHN WOODRUFF,**<br>Plaintiff,<br><br>**v.**<br><br>**LUIGI RAGAZZONI, et al.,**<br>Defendants. | **Case No. 2:23-cv-1155-CLM** |

## MEMORANDUM OPINION

Plaintiff John Woodruff was twice arrested by Shelby County Sheriff's Deputies during August and September 2021. Both times, deputies impounded Woodruff's truck and searched its contents. Woodruff now sues the arresting deputies, Luigi Ragazzoni and David Pressley, for violating his Fourth Amendment rights against wrongful search and seizure. (*See* Doc. 9). Ragazzoni and Pressley move for summary judgment. (Docs. 44, 45). For the reasons stated within, the court **GRANTS** Ragazzoni and Pressley's motion (doc. 44, 45).

## STATEMENT OF THE FACTS

Ragazzoni and Pressley contend that their searches of Woodruff's truck were valid inventory searches of Woodruff's impounded vehicle. While officers "generally need a warrant to conduct a search, they do not need a warrant to search an impounded car if they (1) had the authority to impound the car, and (2) followed department procedures governing inventory searches." *See United States v. Isaac*, 987 F.3d 980, 988 (11th Cir. 2021). Thus, whether the searches of Woodruff's truck violated his constitutional rights largely turns on whether Ragazzoni and Pressley followed Shelby County's policies on impoundment and inventory searches. Below, the court describes the relevant Shelby County policies and then details the two searches of Woodruff's truck. Because Woodruff is the non-moving party, the court recites the facts in a light most favorable to him. *See Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 966 (11th Cir. 2002).

### A. Shelby County Policies on Impoundment + Inventory

Shelby County currently has two policies relevant to the impoundment of vehicles incident to arrest. The first policy is titled "Towing of Vehicles," and the second policy is titled "Wrecker Service Procedure." Under the Wrecker Service Procedure, "[a]ll vehicles operated by persons arrested will be towed unless other arrangements are made." (Doc. 44-2, p. 12). And under the Towing of Vehicles policy, "[a]ny time a vehicle other than a Sheriff's Office vehicle is towed, a tow in report (including vehicle inventory) shall be completed on the designated form or software." (*Id.*, p. 7). In conducting an inventory search, deputies are expected to examine the compartment and containers within the vehicle and to document any existing damage to the vehicle or its equipment. (*Id.*, p. 5). And deputies executing this policy when arresting an occupant of a vehicle "must follow search and seizure[ ] rules and guidelines that have been established under the fourth amendment of the U.S. Constitution." (*Id.*, p. 8). Both Ragazzoni and Pressley agree that this means that the Fourth Amendment trumps Shelby County's policies on vehicle searches if the two conflict. (Doc. 44-2, p. 20; Doc. 44-3, p. 12).

Different rules apply for towing a vehicle following an out-of-county arrest. "When an out of county arrest is made by a law enforcement agency outside Shelby County and the arrestee is in possession of a vehicle, it is the responsibility of the arresting agency to secure and tow the vehicle to a lot in their jurisdiction." (Doc. 44-2, p. 8). But "[i]f the arresting agency refuses to tow the vehicle, a supervisor will be contacted and the supervisor will make a decision as to what action will be taken regarding the arrestee's vehicle. Within reason, the supervisor may elect to dispatch a rotational wrecker from the Sheriff's Office." (*Id.*).

### B. Search by Ragazzoni

Shelby County issued a warrant for Woodruff's arrest on August 25, 2021, based on Woodruff's alleged failure to comply with the Alabama Sex Offender Registration and Community Notification Act's ("ASORCNA") vehicle registration requirement. (Doc. 44-3, pp. 26–27). After 11:00 PM on August 27, 2021, Woodruff arrived at 24E Fitness in Pelham, Alabama driving his Black 2013 Nissan Frontier Truck. (Doc. 44-4, p. 5; Doc. 44-3, p. 27).

While Woodruff was parked in the parking lot, Pelham police officers walked up to the truck. (Doc. 44-4, p. 5). After confirming that Woodruff had an outstanding warrant, the officers required Woodruff to step outside the vehicle. (*Id.*). The officers then explained that they would wait for a Shelby County deputy to arrive to make an arrest. (*Id.*).

Shelby County dispatched Ragazzoni to execute the warrant. (Doc. 44-4, pp. 55–56). Once on the scene, Ragazzoni confirmed that the identity on the arrest warrant matched Woodruff. (*Id.*). Ragazzoni then placed Woodruff in the back of his patrol vehicle, impounded Woodruff's truck, and conducted an inventory search of the truck. (Doc. 44-4, pp. 55–56; Doc. 44-5, p. 4). Ragazzoni also completed an Impoundment Vehicle Report and Arrest Report. (*Id.*). Woodruff says that he asked Ragazzoni to leave his truck undisturbed so that his family could retrieve the truck around dawn. (Doc. 9, ¶ 18). But Ragazzoni refused. After a tow truck arrived and took custody of Woodruff's vehicle, Ragazzoni transported Woodruff to the Shelby County Jail. (Doc. 44-5, p. 4). Three days later, Woodruff was released on bond. (Doc. 44-4, p. 15).

### C. Search by Pressley

The next day, Shelby County issued another warrant for Woodruff's arrest because the State moved to revoke Woodruff's probation for allegedly committing a new offense. (Doc. 44-5, p. 12). On September 18, 2021, Woodruff visited the Leeds' Buc-ee's, which is in Jefferson County, Alabama. (Doc. 44-4, p. 28). After leaving the store, Woodruff returned to his truck and put it in reverse. (*Id.*, p. 29). He then saw police lights come on behind the truck. (*Id.*).

A Leeds Police Officer approached Woodruff and asked him to step outside the truck. (*Id.*). The Leeds Police Department then notified Pressley about the stop. (Doc. 44-5, p. 35). Dispatch sent a tow truck from Shelby County, and Pressley went to Buc-ee's to take custody of Woodruff. (*Id.*). While at Buc-ee's, Pressley conducted an inventory search by opening compartments and closed items within the truck and looking for any obvious damage to the truck or its contents. (*Id.*, pp. 35–36). According to Woodruff, he asked Pressley to leave his truck and told him that his family would retrieve the truck in three to four hours. (Doc. 9, ¶ 30).

Because Pressley's shift had ended, he contacted Shelby County Sheriff's Deputy Collin Johnson and transferred custody of Woodruff and his property to Johnson at the old Shelby County Sheriff's Office North Sub Station. (Doc. 44-5, p. 36). Johnson then transported Woodruff to the Shelby County Jail and completed Woodruff's arrest report. (*Id.*).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

The Fourth Amendment protects citizens from "unreasonable searches and seizures." U.S. CONST. amend. IV. Woodruff alleges that Ragazzoni and Pressley violated this right with the warrantless searches and seizures of his truck.

Ragazzoni and Pressley assert the defense of qualified immunity. Qualified immunity protects government officials from being sued in their individual capacities so long as "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eleventh Circuit applies a two-part test to determine whether a government official is entitled to the defense of qualified immunity. "First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. Second, if the official meets that burden, the plaintiff must prove that the official's conduct violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citations omitted).

Ragazzoni and Pressley were acting within the scope of their duties as sheriff's deputies when they executed Woodruff's arrest warrants, impounded his truck, and conducted the inventory searches. So the court's task is to determine whether, when viewing the evidence in the light most favorable to Woodruff, Ragazzoni or Pressley violated clearly established law.

### A. Shelby County's Policies

As discussed, officers "do not need a warrant to search an impounded car if they (1) had the authority to impound the car, and (2) followed department procedures governing inventory searches." *Isaac*, 987 F.3d at 988. And the Eleventh Circuit has described an arrestee's clearly established rights as it relates to vehicle impoundments and inventory searches as follows:

> Even if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of "something other than suspicion of evidence of criminal activity." If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria. Because an inventory search is an exception to the Fourth Amendment's warrant requirement, however, the government officer has the burden to show that the requirements of the inventory search exception have been met.

*Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992). So Ragazzoni and Pressley argue that they did not violate Woodruff's clearly established rights because they followed the "Towing of Vehicles" policy and "Wrecker Service Procedure" in impounding and searching Woodruff's truck.

Woodruff disagrees. While Woodruff acknowledges that the two policies produced during discovery reflect Shelby County's current procedures for impounding vehicles, he asserts that Ragazzoni and Pressley have failed to establish that these procedures were also in place in 2021.

But Ragazzoni and Pressley have produced a declaration from Russell Bedsole, the Chief Deputy of the Shelby County Sheriff's Office, who asserts that he has personal knowledge that Shelby County maintained the Towing Vehicles policy and Wrecker Service Procedure "[i]n 2021, and continuing through the present." (Doc. 44-2, pp. 3–4). Ragazzoni also testified that to the "best of [his] recollection" the produced policies were the policies in effect in August 2021. (*See* Doc. 44-2, p. 17). And during his deposition, Pressley suggested that the produced policies were the ones that governed the impoundment of Woodruff's truck. (*See* Doc. 44-3, p. 9). So Ragazzoni and Pressley have met their initial burden under Rule 56(c) to cite "particular parts of materials in the record" that establish that Shelby County followed the Towing Vehicles policy and Wrecker Service Procedure at the time of Woodruff's arrest.

The burden thus shifts to Woodruff to either cite "to particular parts of materials in the record" that contradict Ragazzoni and Pressley's evidence or show that the evidence Ragazzoni and Pressley cited does "not establish the absence . . . of a genuine dispute." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B). Woodruff attempts to meet this burden by pointing out that Bedsole has only recently assumed his position as Shelby County's administrative commander and was the commander of Shelby County's Jail Division in 2021. (Doc. 47-3, p. 2). According to Woodruff, because Bedsole's job in 2021 was to oversee jail administration, he is not competent to testify about which policies governed patrol officers' impoundment of vehicles at the time of Woodruff's arrests. Woodruff also asserts that Ragazzoni's mere "belief" that the 2021 and 2026 policies were the same is not enough to establish the absence of a genuine dispute of material fact. Finally, Woodruff argues that a jury could disbelieve Ragazzoni and Pressley's evidence that the Towing Vehicles policy and Wrecker Service Procedure were in effect in 2021 because (a) neither Ragazzoni nor Pressley knew who authored the policies, (b) Ragazzoni did not know the effective or revision date for either policy, and (c) Pressley did not know who maintained the policies.

"[D]iscredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion." *Anderson*, 477 U.S. at 257. So "a plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.*

And here, all of the evidence suggests that the Towing Vehicles policy and Wrecker Service Procedure were in place at the time of Woodruff's arrests. To be sure, these polices were the policies produced in response to Woodruff's requests for production and relied on in Ragazzoni and Pressley's interrogatory responses. And both Ragazzoni and Pressley testified during their depositions that these were the policies they followed when they impounded Woodruff's truck. (*See* Doc. 44-2, p. 17; Doc. 44-3, p. 9). Plus, though Bedsole only recently assumed the role of Chief Deputy, he has been with the Shelby County Sheriff's Office since 1999, with previous stints in the Administrative and Patrol Divisions. (Doc. 47-3, p. 2). Woodruff has thus failed to show that Bedsole would lack personal knowledge of which policies on the towing of vehicles were in effect in 2021.

Because Woodruff has pointed to no affirmative evidence that contradicts Ragazzoni and Pressley's assertion that the Towing Vehicles policy and Wrecker Service Procedure were in effect at the time of Woodruff's arrest, the court finds it undisputed that these policies were in effect. *See Hammett v. Paulding Cnty.*, 875 F.3d 1036, 1048–50 (11th Cir. 2017); *see also Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) ("All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable."). Thus, if the two policies were based on standard criteria and Ragazzoni and Pressley followed the standardized criteria in searching Woodruff's truck, they are entitled to qualified immunity. *See Sammons*, 967 F.2d at 1543.

### B. Ragazzoni's Search and Seizure

Again, Ragazzoni arrested Woodruff after Pelham police officers told him that they had detained Woodruff who had an outstanding warrant based on an alleged failure to comply with ASORCNA's vehicle registration requirement. According to Ragazzoni, he placed Woodruff in handcuffs after confirming that Woodruff was the person with the outstanding warrant and then asked the Pelham police officers if Woodruff was inside his vehicle when they made initial contact with him. When the Pelham police officers confirmed that they first saw Woodruff inside his truck, Ragazzoni says that he decided to impound the truck and conduct an inventory search.

Under the Wrecker Service Procedure, "[a]ll vehicles operated by persons arrested will be towed unless other arrangements are made." (Doc. 44-2, p. 12). So Ragazzoni had authority to impound Woodruff's truck if Woodruff was encountered while operating his truck. *See Isaac*, 987 F.3d at 988–89 ("An officer has authority to impound a car if his decision to impound is in good faith, based upon standard criteria, and not solely based on suspicion of criminal activity." (quotations omitted)). But Woodruff contends that Ragazzoni didn't have the authority to impound his truck because (a) Ragazzoni didn't see Woodruff inside his truck, and (b) the Pelham police officers' statement that Woodruff was inside his truck at the time they approached him is inadmissible hearsay.

Nothing in the Wrecker Service Procedure or Towing Vehicle policy suggests that the officer who decides to impound an arrestee's vehicle must also be the officer who observed the arrestee operating the vehicle. That the policy for out of county arrests (a) allows Shelby County to tow a vehicle that an arresting agency refuses to tow, and (b) requires a supervisor to make that call suggests that the officer who decides to impound the vehicle needn't be the officer who observed the arrestee in the vehicle or even from the same law enforcement agency as the officer who first encountered the arrestee. And "an out-of-court statement offered to show its effect on the listener isn't hearsay because it's not offered to prove the truth of the matter asserted." *United States v. Holley*, 166 F.4th 139, 148 (11th Cir. 2026) (cleaned up). So it is permissible for Ragazzoni to testify about what the Pelham Police Officers told him about whether Woodruff was operating his truck at the time they approached him. *See id.* at 149–50. Besides, Woodruff admits that he was inside his parked truck when the Pelham Police Officers approached and asked him to step outside. (*See* Doc. 45, p. 6, Undisputed Material Fact #11; Doc. 46, p. 3, accepting Undisputed Material Fact #11). Thus, Woodruff's truck was a vehicle operated by a "person[ ] arrested," and Shelby County's default rule is that those vehicles must be impounded.

Woodruff has also failed to show that his truck shouldn't have been impounded because he was arrested in the parking lot of a private fitness club. As discussed, "[e]ven if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard," it does not violate the arrestee's clearly established rights to impound his vehicle "so long as the decision to impound is made on the basis of standard criteria and on the basis of 'something other than suspicion of evidence of criminal activity.'" *Sammons*, 967 F.2d at 1543; *see also United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990) (an inventory search was valid when the defendant had "pulled his automobile into the parking lot of a private corporation" because "there was no one present to whom [the arrestee] could give custody" of his vehicle).

Woodruff admits that Ragazzoni did not perform the inventory search "on suspicion of criminal activity." (*See* Doc. 45, p. 7, Undisputed Material Fact #14; Doc. 46, p. 3, accepting Undisputed Material Fact #14). And Shelby County's Towing Vehicles policy and Wrecker Service Procedure do not distinguish between when an arrestee's vehicle is stopped on the street or is in a private parking lot. Instead, the Wrecker Service Procedure says: "***All vehicles*** operated by persons arrested will be towed unless other arrangements are made." (Doc. 44-2, p. 12 (emphasis added)). Woodruff also acknowledges that Ragazzoni arrested him around midnight, so it would have likely taken until dawn for Woodruff to have someone come and retrieve his truck. (*See* Doc. 44-4, p. 13). Thus, it was reasonable for Ragazzoni to conclude that no "other arrangement" could be made for Woodruff's truck.

Woodruff's situation also differs from the 'Joe the Plumber' hypothetical that Woodruff gave Ragazzoni and Pressley during their depositions. In the hypothetical, Joe parks in a Walmart parking lot, goes inside Walmart, and is caught shoplifting by Walmart loss prevention. (Doc. 46, pp. 10–11). Loss prevention calls the sheriff's office, and a deputy arrives to arrest Joe as he is exiting the store. (*See id.*). According to Ragazzoni and Pressley, they wouldn't tow Joe's car in that situation because he wasn't in his car when the sheriff's deputy encountered him. (*See id.*). But here, Woodruff was inside his truck when approached by the Pelham police officers, and he only exited his truck because the officers ordered him to do so. (*See* Doc. 44-4, p. 5). Under these circumstances, the Wrecker Service Procedure and Towing Vehicles policy authorized the impoundment of Woodruff's truck.

Because the impoundment of Woodruff's truck was authorized, Ragazzoni didn't need a warrant to perform an inventory search of the truck if he "followed department procedures governing inventory searches." *Isaac*, 987 F.3d at 988. Ragazzoni did so by looking through the items in Woodruff's truck, walking around the truck to note any damage, and filling out an Impoundment Vehicle Report. (*See* Doc. 45, p. 7, Undisputed Material Fact #14; Doc. 46, p. 3, accepting Undisputed Material Fact #14; Doc. 45, p. 7, Undisputed Material Fact #15; Doc. 46, p. 3 accepting Undisputed Material Fact #15; Doc. 44-2, p. 7; Doc. 44-5, p. 7). As a result, Ragazzoni did not violate Woodruff's clearly established constitutional rights and is entitled to qualified immunity on the claim brought against him.

**C. Pressley's Search and Seizure**

The court thus turns to Woodruff's claim against Pressley. As discussed, Pressley took custody of Woodruff and impounded his truck after Leeds police officers encountered Woodruff, who had an outstanding arrest warrant, in the Buc-ee's parking lot.

Like with Ragazzoni, Woodruff contends that Pressley lacked authority to impound Woodruff's truck because Pressley didn't personally observe Woodruff operating the truck. But as explained, the relevant policies do not require the person who makes the impoundment decision to personally observe the arrestee operating his vehicle. And Woodruff admits that he was backing out of a Buc-ee's parking spot when the Leeds officers stopped him and ordered him out of the truck. (*See* Doc. 45, pp. 7–8, Undisputed Material Facts #18–19; Doc. 46, p. 3, accepting Undisputed Material Facts #18–19).

The court recognizes that before he was detained, Woodruff had gone inside the Buc-ee's and then returned to his truck. (*See* Doc. 44-4, pp. 28–29). So the impoundment of Woodruff's truck at Buc-ee's is more like Woodruff's 'Joe the Plumber' hypothetical than the impoundment of Woodruff's truck at the fitness club was. But the scenarios still differ. Unlike Joe, who was walking out of a store when he was apprehended, Woodruff was backing out of a parking spot when he was apprehended. So Woodruff's truck was a "vehicle[ ] operated by [a] person[ ] arrested" under the relevant Shelby County policies.

Thus, the truck could be impounded even though Woodruff was inside Buc-ee's private parking lot. *Sammons*, 967 F.2d at 1543; *Roberson*, 897 F.2d at 1096.

Buc-ee's is located in Jefferson County. So Woodruff rightly points out that Shelby County's policy for "Towing a Vehicle Following an Out of County Arrest" is what controlled Pressley's ability to impound Woodruff's truck. That policy says that "[i]f the arresting agency refuses to tow the vehicle, a supervisor will be contacted and the supervisor will make a decision as to what action will be taken regarding the arrestee's vehicle. Within reason, the supervisor may elect to dispatch a rotational wrecker from the Sheriff's Office." (Doc. 44-2, p. 8). Pressley testified that after apprehending Woodruff, Leeds Police Officer Hooks texted Pressley, "You guys sending a wrecker for his truck," which Pressley interpreted as a request for Shelby County to tow the vehicle. (Doc. 44-3, p. 8). According to Pressley, he contacted his supervisor Sergeant Sumrall who gave Pressley permission to tow Woodruff's truck. (*Id.*, pp. 8, 13–14; Doc. 44-5, p. 35). So Pressley initiated the process for having a wrecker impound Woodruff's truck. (Doc. 44-3, p. 14).

Woodruff asserts that Hooks' text and Sumrall's statement granting permission for the tow are inadmissible hearsay. But Hooks' text is an out of court statement that Pressley uses "to show its effect on the listener," so the text isn't hearsay. *Holley*, 166 F.4th at 148. And Pressley's testimony that he spoke with Sumrall "who approved the tow" does not impermissibly repeat any of Sumrall's out of court statements. The court also rejects Woodruff's argument that Pressley has failed to establish that he received supervisor approval for the tow because Pressley (a) does not have any documentary evidence corroborating this assertion, and (b) could not remember some details of Woodruff's arrest. As discussed, "discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion." *Anderson*, 477 U.S. at 257 (cleaned up). And Woodruff has presented no evidence that contradicts Pressley's repeated assertions that he received Sumrall's approval. Woodruff also agrees that Pressley did not conduct the inventory search on suspicion of criminal activity. (*See* Doc. 45, p. 9, Undisputed Material Fact #22; Doc. 46, p 4, accepting Undisputed Material Fact #22). Nor does it appear that timely other arrangements could be made for Woodruff's truck. (*See* Doc. 44-4, p. 29). Thus, Shelby County's policies authorized Pressley's impoundment of Woodruff's truck.

Because Pressley was authorized to impound Woodruff's truck, Pressley didn't need a warrant to perform an inventory search of the truck if he "followed department procedures governing inventory searches." *Isaac*, 987 F.3d at 989. Like Ragazzoni, Pressley did so by going through the items in Woodruff's truck, looking for any obvious damage to the truck or its contents, and filling out an Impoundment Vehicle Report. (*See* Doc. 45, p. 9, Undisputed Material Facts #23–24; Doc. 46, p. 4, accepting Undisputed Material Facts #23–24; Doc. 44-2, p. 7; Doc. 44-5, p. 38). So Pressley did not violate Woodruff's clearly established Fourth Amendment rights and is thus entitled to qualified immunity.

—

In sum, both Ragazzoni and Pressley impounded Woodruff's truck and conducted an inventory search in accordance with Shelby County's towing policies and wrecker service procedures. So the inventory search exception to the warrant requirement applies, and Ragazzoni and Pressley could impound and search Woodruff's truck without a warrant even without satisfying other exceptions to the warrant requirement, such as the search incident to arrest or automobile exceptions. *See United States v. Gonzalez*, 2025 WL 573709, at *3 (11th Cir. Feb. 21, 2025) (distinguishing between the inventory and search incident to arrest exceptions); *United States v. Moss*, 748 F. App'x 257, 258 (11th Cir. 2018) (resolving appeal of denial of motion to suppress on inventory search exception grounds alone even though Government argued search incident to arrest and automobile exceptions also applied).

## CONCLUSION

For these reasons, the court **GRANTS** Ragazzoni and Pressly's motion for summary judgment (docs. 44, 45). The court will enter a separate final order that **DISMISSES WITH PREJUDICE** Counts 1 and 3 of Woodruff's amended complaint and closes this case.

**DONE** and **ORDERED** on September 2, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE